**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PETER BERGMAN, BOBBIE CASON, and LISA SMITH on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:10-cv-00191 |
| v. | ) ) | Judge William T. Hart Magistrate Judge Nan R. Nolan |
| KINDRED HEALTHCARE, INC., KINDRED CHICAGO LAKESHORE, KINDRED HOSPITALS EAST, LLC and DOE DEFENDANTS 1-10, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE
PURSUANT TO SECTION 216(b) OF THE FAIR LABOR STANDARDS ACT
AND CLASS CERTIFICATION OF THE ILLINOIS STATE CLASSES
<u>PURSUANT TO FED. R. CIV. P. 23</u>**

## BRIEF STATEMENT OF ISSUES TO BE DECIDED

Is this case, where Plaintiffs allege violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA") and Illinois state laws resulting from Defendants' policy of subjecting non-exempt, hourly employees to an automatic 30-minute meal break deduction without ensuring that such employees do not work through all or part of their meal break, appropriate for:

1) conditional certification and Court-authorized notice, pursuant to Rule 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); and

2) class certification of the Illinois state law wage and hour claims (including the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.* (or alternatively under Illinois common law for unjust enrichment)), pursuant to Fed. R. Civ. P. 23?

## SUMMARY OF ARGUMENT

Plaintiffs, Peter Bergman, Bobbie Cason and Lisa Smith ("Plaintiffs"), submit this memorandum in support of their motion for conditional certification pursuant to 29 U.S.C. § 216(b) of the FLSA and certification of their state law claims under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.* (or alternatively under Illinois common law for unjust enrichment), pursuant to Fed. R. Civ. P. 23 (the "Motion").  Plaintiffs move under the FLSA on behalf of all persons who are or were employed by Defendants throughout the country whose pay was subject to an automatic meal break deduction, even though they performed compensable work during such unpaid break, at any time since January 12, 2007 (the "Collective Class"). Plaintiffs also move under Fed. R. Civ. P. 23 on behalf of two separate subclasses – the "IMWL Class" and "IWPCA Class", whose members were subject to an automatic meal break deduction, even though they performed compensable work during such unpaid break (together the "Rule 23 Classes").[1]  Plaintiffs' proposed IMWL Class consists of:

> All persons employed by Defendants at any of their Illinois facilities at any time since January 12, 2007, who worked in excess of forty (40) hours in any individual workweek, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid "meal break," and who were not paid for all overtime worked, including such uncompensated meal break time, at a rate of one and one-half times their regular rate of pay.

Plaintiffs' proposed IWPCA Class is defined as:

> All persons employed by Defendants at any of their Illinois facilities at any time since January 12, 2000, who worked fewer than forty (40) hours in any individual workweek, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid "meal

---

[1] The Collective Class and Rule 23 Classes shall be referred to collectively as the "Classes."

break," and who were not paid for all time worked, including such uncompensated meal break time. [2]

As set forth below, Plaintiffs and the Classes are similarly situated under the FLSA and meet the requirements for dissemination of notice pursuant to Section 216(b), as well as the requirements under Rule 23 for certification of Rule 23 Classes. Specifically, Plaintiffs and the Classes – are similarly situated because: 1) Defendants had a systematic, corporate-wide practice of automatically deducting a 30-minute meal break from the daily work time of all non-exempt employees for each shift they worked, regardless of whether these employees performed compensable work during this unpaid break; 2) Defendants, as a matter of corporate-wide policy, inappropriately shifted the burden of monitoring "compensable work time" to their employees, by requiring them to "cancel" the automatic meal break deduction every time they did not receive a full, uninterrupted meal break; 3) the Classes were, as a matter of corporate-wide policy, not adequately educated about what constitutes an "uninterrupted meal break;" 4) Defendants, as a matter of corporate-wide policy, do not properly advise their managers to monitor when their non-exempt, hourly employees do not receive an "uninterrupted meal break"; and 5) Plaintiffs and the Classes were subjected to Defendants' uniform failure to monitor when employees did not receive their full, uninterrupted meal break even though the time for such meal break was automatically deducted. This automatic deduction of 30 minutes for every shift worked has led to a systemic underpayment.

---

[2] As set forth in the operative Complaint, Plaintiffs' also move for certification of their commons law unjust enrichment claim in the alternative to their IWPCA claim/class. Accordingly, Plaintiffs' proposed unjust enrichment class is defined as:

All persons employed by Defendants at any of their Illinois facilities at any time since January 12, 2005, who worked fewer than forty (40) hours in any individual workweek, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid "meal break," and who were not paid for all time worked, including such uncompensated meal break time.

It cannot be disputed that Defendants had a uniform and consistent corporate-wide policy of automatically deducting 30-minutes work time from the daily work time of each non-exempt, hourly-paid employee. Throughout the class periods covered by this action, Defendants, pursuant to their uniform practices and conduct, failed to explain or educate adequately its employees about how to obtain lost compensable time. Compounding this failure, Defendants actually provided its employees with contradictory policies that caused confusion. Pursuant to this contradictory corporate policy Defendants: (i) indicate that meal breaks shorter than 30 minutes would be rounded up to 30 minutes (thereby preserving the uniformity of the automatic deduction) and (ii) in another part of the same policy, instruct employees to notify their manager if their meal break was shorter than 30 minutes. By first indicating that shortened breaks would be rounded up to 30 minutes, Defendants effectively made the second part of the policy moot in the minds of the employees, which is evidenced by the uncompensated time worked by Plaintiffs and the Classes. Compounding the problems associated with this inadequate corporate-wide policy, Defendants shift their burden of keeping accurate time records to their employees to report such missed meal breaks without adequately educating and explaining how to do so. Defendants' policy thus flouts the fundamental principle of the FLSA: employers must monitor and compensate their employees for all work that they "suffer or permit." 29 U.S.C. § 203(g); 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time."). Further, Defendants' policies and practices created a systematic violation of Illinois state law, thereby warranting certification of the Illinois state law claims.

The foregoing uniform policies, practices and conduct extend to Defendants' facilities and apply to the non-exempt employees at those facilities who were subjected to the automatic meal break deduction. The effect of Defendants' policies, practices and conduct is that Plaintiffs

and the members of the Classes have uniformly not been compensated for all hours worked, in violation of the FLSA and Illinois state law.

Consistent with numerous other analogous cases, this action is appropriate for both conditional certification pursuant to the lenient two-stage analysis courts employ in evaluating alleged off-the-clock claims under the FLSA and class treatment under Illinois state law. Accordingly, for the reasons set forth herein, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Conditional Collective Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and for Rule 23 certification of their Illinois state law claims.

# TABLE OF CONTENTS

Page

I.   STATEMENT OF FACTS ................................................................................................. 1

II.  THE NAMED PLAINTIFFS ............................................................................................. 4

III. PLAINTIFFS AND THE PROPOSED CLASSES ARE SIMILARLY SITUATED ........... 7

IV.  ARGUMENT ................................................................................................................. 8

A.   Conditional Certification Under Rule 216(b) Of The FLSA Is Appropriate .......................... 8

    1.   Courts in the Seventh Circuit Employ a Two-Stage Certification Process ................. 9

    2.   Defendants' Meal Break Deduction Policy Does Not Comply with the Law ........... 12

    3.   The Collective Class Was Subject to Defendants'
       Uniform Meal Break Deduction Policy ........................................................... 16

B.   Certification Under Fed. R. Civ. P. 23 Is Also Appropriate ................................................. 18

    1.   Rule 23(a)(1) – Numerosity ...................................................................... 19

    2.   Rule 23(a)(2) - Commonality ..................................................................... 20

    3.   Rule 23(a)(3) - Typicality ......................................................................... 21

    4.   Rule 23(a)(4) and (g) - Adequacy of Representation
       and Appointment of Counsel ...................................................................... 22

    5.   Rule 23(b)(3) -- Predominance/Superiority ................................................. 23

         (a)   Common Questions of Law or Fact Predominate ............................. 23

         (b)   A Class Action is Superior to Other Available Adjudication Methods ........... 24

V.   CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alvarez v. City of Chicago,*
605 F.3d 445 (7th Cir. 2010) ............................................................................8, 10

*Anyere v.Wells Fargo, Co.,*
No. 09-cv-2769, 2010 U.S. Dist. LEXIS 35599 (N.D. Ill. April 12, 2010)............................12

*Barragan v. Evanger's Dog and Cat Food Co., Inc.,*
259 F.R.D. 330 (N.D. Ill. 2009)................................................................................23

*Belbis v. County of Cook,*
No. 01 C 6119, 2002 U.S. Dist. LEXIS 22426 (N.D. Ill. Nov. 13, 2002)..............................19

*Berger v. Cleveland Clinic Found.,*
No. 1:05-CV-1508, 2007 U.S. Dist. LEXIS 76593 (N.D. Ohio. Sept. 29, 2007)....................19

*Bouaphakeo v. Tyson Foods, Inc.,*
564 F. Supp. 2d 870 (N.D. Iowa 2008)....................................................................10

*Camesi v. Univ. of Pittsburgh Med. Ctr.,*
No. 09-85J, 2009 U.S. Dist. LEXIS 40571 (W.D. Pa. May 14, 2009)....................................15

*Cannon v. Nationwide Acceptance Corp.,*
No. 96 C 1136, 1997 U.S. Dist. LEXIS 3517 (N.D. Ill. March 24, 1997) ..............................18

*Church v. Consolidated Freightways, Inc.,*
137 F.R.D. 294 (N.D. Cal. 1991)............................................................................18

*Civic Ass'n of the Deaf of NYC, Inc. v. Giuliani,*
915 F. Supp. 622 (S.D.N.Y. 1996)..........................................................................20

*Clark v. Retrieval Masters Creditors Bureau, Inc.,*
185 F.R.D. 247 (N.D. Ill. 1999)..............................................................................21

*Clarke v. Convergys Customer Mgmt. Group, Inc.,*
370 F. Supp. 2d 601 (S.D. Tex. 2005) ....................................................................11

*Collazo v. Forefront Ed., Inc.,*
No. 08-cv-5987, 2010 U.S. Dist. LEXIS 7661 (N.D. Ill. Jan. 28, 2010)................................9

*Comer v. Wal-Mart Stores, Inc.,*
454 F.3d 544 (6th Cir. 2006) ................................................................................8

*Daley v. Provena Hospitals,*
193 F.R.D. 526 (N.D. Ill. 2000)..............................................................................23

*Table of Authorities - Continued*

Page(s)

*Davis v. Suran,*
  No. 98 C 0656, 1998 U.S. Dist. LEXIS 12233 (N.D. Ill. Aug. 3, 1998) ................................24

*De La Fuente v. Stokely-Van Camp, Inc.,*
  713 F.2d 225 (7th Cir. 1983) ................................................................................................21

*Ervin v. OS Rest. Servs., Inc.,*
  No. 08-C-1091, 2009 U.S. Dist. LEXIS 56062 (N.D. Ill. July 1, 2009)...........................9, 11

*Ervin v. OS Restaurant Servs., Inc.,*
  632 F.3d 971 (7th Cir. 2011) ..........................................................................................8, 24, 25

*Flores v. Lifeway Foods, Inc.,*
  289 F. Supp. 2d 1042 (N.D. Ill. 2003) ...................................................................................9

*Fournigault v. Independence One Mortgage Corp.,*
  234 F.R.D. 641 (N.D. Ill. 2006)................................................................................................23

*Gambo v. Lucent Techs., Inc.,*
  No. 05-C-3701, 2005 U.S. Dist. LEXIS 37998 (N.D. Ill. Dec. 22, 2005)...........................9, 17

*Gammon v. GC Servs. Ltd. P'ship,*
  162 F.R.D. 313 (N.D. Ill. 1995)................................................................................................22

*Herrera v. Unified Mgmt. Corp.,*
  No. 99 C 5004, 2000 U.S. Dist. LEXIS 12406 (N.D. Ill. Aug. 18, 2000)...............................18

*In re Folding Carton Antitrust Litig.,*
  75 F.R.D. 727 (N.D. Ill. 1977).................................................................................................24

*Jirak v. Abbott Laboratories, Inc.,*
  566 F. Supp. 2d 845 (N.D. Ill. 2008) .......................................................................................9

*Jones-Turner v. Yellow Enter. Sys., LLC,*
  No. 3:07-cv-218-S, 2007 U.S. Dist. LEXIS 79414 (W.D. Ky. Oct. 24, 2007) .......................16

*Keele v. Wexler,*
  149 F.3d 589 (7th Cir. 1998) ..................................................................................................20

*Kernats v. Comcast Corp.,*
  No. 09 C 3368, 2010 U.S. Dist. LEXIS 112071 (N.D. Ill. Oct. 20, 2010) ............19, 20, 23, 24

*Kuznyetsov v. West Penn Allegheny Health System, Inc.,*
  No. 2:09-CV-00379-DWA, 2009 U.S. Dist. LEXIS 47163 (W.D. Pa. June 1, 2009).......16, 17

*Table of Authorities - Continued*

Page(s)

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,
    No. 00 C 5755, 2000 U.S. Dist. LEXIS 17832 (N.D. Ill. Nov. 30, 2000)............19, 21, 23, 25

*Lindberg v. UHS of Lakeside, LLC,*
    No. 2:10-cv-2014-JPM, 2011 U.S. Dist. LEXIS 6711
    (W.D. Tenn. Jan. 21, 2011)............................................................................ 11-12, 15, 16, 17

*Madden v. Corinthian Colleges, Inc.*,
    No. 08 C 6623, 2009 U.S. Dist. LEXIS 115331 (N.D. Ill. Dec. 8, 2009) ...............................11

*Manning v. Goldbelt Falcon, LLC,*
    No. 08-3427 (JEI), 2010 U.S. Dist. LEXIS 104029 (D.N.J. Sept. 29, 2010) .........................18

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010).........................................................................................9, 10

*Nicholson v. UTI Worldwide, Inc.*,
    No. 3:09-CV-722-JPG, 2011 U.S. Dist. LEXIS 7612 (S.D. Ill. Jan. 26, 2011) ...............11, 14

*North v. Board of Trustees of Illinois State Univ.*,
    676 F. Supp. 2d 690 (C.D. Ill. 2009) ......................................................................................9

*Olden v. LaFarge Corp.,*
    203 F.R.D. 254 (E.D. Mich. 2001), *aff'd,* 383 F.3d 495 (6th Cir. 2004) ...............................20

*Owner-Operator Independent Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*,
    231 F.R.D.280 (N.D. Ill. 2005)..............................................................................................21

*Patrykus v. Gomilla*,
    121 F.R.D. 357 (N.D. Ill. 1988)..............................................................................................20

*Persin v. Careerbuilder, LLC*,
    No. 05-C-2347, 2005 U.S. Dist. LEXIS 29727 (N.D. Ill. Nov. 23, 2005) .........................9, 10

*Realite v. Ark Rests. Corp.*,
    7 F. Supp. 2d 303 (S.D.N.Y. 1998).........................................................................................10

*Redmon v. Uncle Julio's of Ill., Inc.*,
    249 F.R.D. 290 (N.D. Ill. 2008)..............................................................................................20

*Reich v. Southern New Eng. Telecomms. Corp.*,
    121 F.3d 58 (2d Cir. 1997)......................................................................................................13

*Table of Authorities - Continued*

Page(s)

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) .............................................................21

*Ross v. RBS Citizens, N.A. d/b/a Charter One*,
   No. 09-cv-5695, 2010 U.S. Dist. LEXIS 107779 (N.D. Ill. Oct. 8, 2010) .............................23

*Russell v. Illinois Bell Tel. Co.*,
   575 F. Supp. 2d 930 (N.D. Ill. 2008) ....................................................9, 12, 16

*Schleicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010) .............................................................18

*Scholes v. Stone, McGuire & Benjamin*,
   143 F.R.D. 181 (N.D. Ill. 1992) .........................................................19, 24

*Sharpe v. APAC Customer Servs., Inc.*,
   No. 09-cv-329-bbc, 2010 U.S. Dist. LEXIS 1671 (W.D. Wis. Jan. 8, 2010) ..........................11

*Shiner v. Select Comfort Corp.*,
   No. 09-C-2630, 2009 U.S. Dist. LEXIS 116209 (N.D. Ill. Dec. 9, 2009) ..........................9, 18

*Sorensen, et al., v. CHT Corp.*,
   No. 03 C 1609, 2004 U.S. Dist. LEXIS 3729 (N.D. Ill. March 9, 2004) .........................18, 24

*Spoerle v. Kraft Foods Global, Inc.*,
   253 F.R.D. 434 (W.D. Wis. 2008) .........................................................19

*Szabo v. Bridgeport Machines, Inc.*,
   249 F.3d 672 (7th Cir. 2001) .............................................................19

*Walker v. Bankers Life & Cas. Co.*,
   No. 06 C 6906, 2007 U.S. Dist. LEXIS 73502 (N.D. Ill. Oct. 1, 2007) ...............................20

*Weeks v. Bareco Oil Co.*,
   125 F.2d 84 (7th Cir. 1941) .............................................................24

*White v. MPW Indus. Servs., Inc.*,
   236 F.R.D. 363 (E.D. Tenn. 2006) .........................................................10

*Witteman v. Wisconsin Bell, Inc.*,
   No. 09-cv-440-vis, 2010 U.S. Dist. LEXIS 8845 (W.D. Wis. Feb. 2, 2010) ..........................9

*Woods v. New York Life Ins. Corp.*,
   686 F.2d 578 (7th Cir. 1982) .............................................................8

*Table of Authorities - Continued*

Page(s)

**STATUTES**

820 ILCS 105/1 *et seq.*......................................................................................................18

29 U.S.C. § 203(g) .............................................................................................................13

29 U.S.C. § 216(b) ....................................................................................................1, 8, 25

**OTHER AUTHORITIES**

29 C.F.R. § 785.11 ............................................................................................................13

29 C.F.R. § 785.13 ............................................................................................................13

29 C.F.R. § 785.19 ............................................................................................................13

29 C.F.R. § 790.21(b)(2)....................................................................................................18

29 C.F.R. § 825.105 ..........................................................................................................13

Alba Conte & Herbert Newberg, *Newberg on Class Actions*.........................................20

F.L.S.A. Rule 216(b)...........................................................................................................8

Rule 23 ........................................................................................................................ passim

Rule 23(a)...................................................................................................20, 21, 22, 23, 25

Rule 23(a)(1) .....................................................................................................................19

Rule 23(a)(2) .....................................................................................................................20

Rule 23(a)(3) .....................................................................................................................21

Rule 23(a)(4) and (g) ........................................................................................................22

Rule 23(b) .........................................................................................................................23

Rule 23(b)(3)..........................................................................................................23, 24, 25

# I. <u>STATEMENT OF FACTS</u>

Plaintiff Peter Bergman filed the initial lawsuit against Kindred Healthcare, Inc., Kindred Chicago Lakeshore, and Doe Defendants 1-10 (collectively, "Defendants") on January 12, 2010. (Docket No. 1). Subsequently, two other actions were consolidated adding Plaintiffs Bobbie Cason and Lisa Smith. *See* D.E. 35 and 45. On February 24, 2011, this Court granted Plaintiffs' leave to file an Amended Complaint, adding Kindred Healthcare Operating, Inc. ("KHOI") as a Defendant. Plaintiffs now move for conditional collective action certification and dissemination of notice to putative collective action members pursuant to Section 216(b) of the FLSA and for certification of their state claims pursuant to Fed. R. Civ. P. 23.

Defendant Kindred Healthcare, Inc., is a healthcare services company that, owns and operates numerous health related facilities such as hospitals, nursing centers, and rehabilitation services, nationwide through its subsidiaries, including but not limited to Defendants Kindred Chicago Lakeshore and Kindred Hospitals East, LLC. *See* Index of Exhibits (hereinafter "Ex. __") at Ex. A, D0002076. Kindred Healthcare, Inc. ("Kindred" or "KHI") owns 100% of the outstanding shares of KHOI (Ex. B. at 27:4-6). KHOI owns 100% of the outstanding shares of its subsidiary, THC Chicago, Inc., which is the licensed operator of Kindred Chicago Lakeshore and Kindred Hospitals East LLC. (Ex. B. at 15:20-24, 16:1-5, 27:6-13). KHOI provides administrative services for all of its subsidiaries across the country, such as payroll, information systems, clinical care support, purchasing, taxes, accounts payable, accounts receivable, risk management, insurance programs, benefits, human resources, advice, and counseling.[3] (Ex. C. 17:1-5; 35:13-19). KHOI, and the operating subsidiaries of KHI, are divided into three divisions

---

[3] Indicative of the control KHOI maintains over these individual facilities, KHOI pays the employees of all of its subsidiaries. (Ex. C. 68:7-10).

– the Hospital Division, the Nursing Center Division, and the Rehabilitation Division. (Ex. C. 54:16-55:23). Each of the subsidiaries must follow Kindred's uniform corporate policies.

Kindred's expectation is that the individual facilities will conform to its corporate policy guidelines. Kindred's written policies are distributed to its subsidiaries, and the CEOs of such subsidiaries are to accept them as written. (Ex. C. 74:17-21). If a facility wants to change any portion of a manual or corporate policy, KHOI must review and approve or deny, any request. (Ex. C. 75:2-17). Indicative of the total control KHOI has over Kindred facilities, KHOI unilaterally changed the automatic meal break deduction policy without any input from Kindred facilities who were required to implement KHOI's new policy. (Ex. F. 138-142).

In January 2007, KHOI promulgated the Kindred Employee Handbook ("Handbook") which included the systematic policies for the automatic meal break deduction. (*Id.*; Ex. D. D0001665-67; Ex. C. 45:17-23). The Handbook is distributed to all Chief Executive Officers of KHOI's subsidiaries throughout the United States since Kindred wanted all its facilities to operate under the same policies and practices, including the automatic meal break policy. (Ex. C. 46:17-22, 73:24, 74:1-2, 147:1-24, 148:1-24).[4] For example, Kindred's Hospital Division Compensation Administration Program Objectives states that Kindred's objective is to maintain "consistency of practices both within hospital and between hospitals." (Ex. E D0002930). In keeping with that objective, from January 2007 to May 2010, **all** facilities in the Kindred Hospital Division were subject to the **same** 30 minute automatic meal break deduction policy. (Ex. C. 63:16-24, 64:1) (emphasis added). In May 2010, KHOI unilaterally eliminated

---

[4] We note that KHOI's corporate representative, Renay Thommen, testified that the automatic meal break deduction may not have applied at certain California facilities. (Ex. C. 63:5-6). Ms. Thommen did not have knowledge of which California facilities or whether the automatic deduction was ever in effect for a certain period of time during the collective period. (Ex. C 64:15-24, 65:1-3).

the automatic meal break deduction policy at all facilities that utilized the policy. (Ex. F. 138-42).

Kindred employs approximately 55,000 employees in the United States. (Ex. C. 96:15-24, 97:1-9). For payroll purposes, and pursuant to the corporate-wide automatic meal break deduction policy, all hourly-paid employees are treated the same[5]. (Ex. C. 147:1-24, 148:1-24, 204:20-24, 205:1-6). Although none of Kindred's corporate representatives possessed knowledge of the exact number of hourly employees subject to the automatic meal break deduction, it is believed that there are thousands of similarly situated employees. Regardless of the facility, all hourly-paid employees are subject to the same timekeeping system. They record their time in the Kindred timekeeping system by electronically swiping in and out on an electronic time clock. (Ex. C. 88:10-19, 175:4-24, 176:1-7; Ex. H.). Prior to May 2010, the Classes did not swipe in or out for their meal break. (Ex. F. 70:5-7). Instead, pursuant to the uniform system, 30 minutes was automatically deducted from employees' time each day, regardless of whether they actually had taken an uninterrupted meal break. (Ex. F. 70:20-24, 71:1-8). As stated in one of Defendants' policies, "[m]eals shorter than 30 minutes are ***rounded up* to 30 minutes**, thus still enforcing the 30-minute auto-deduct." (emphasis in original) (Ex. L. D0001464). At the end of each work period, the employee's manager reviewed and approved the timecard entries and notified payroll to begin processing the employee's time for payment. (Ex. F. 28:6-24, 29:1-10; Ex. H.). As stated above, KHOI processes payroll for all of its subsidiaries. (Ex. C. 19:2-9). Accordingly, for each work period Kindred, through its wholly

---

[5] We note that some of Defendant's California facilities in the Hospital Division and certain facilities in the Nursing Division may not have utilized the automatic meal break deduction policy but KHOI's representative was unable to offer specific information relating to those facilities. To the extent there were facilities that did not employ the automatic meal break deduction, employees at those facilities are excluded from the proposed Collective Class.

owned subsidiary, KHOI, is aware of the total number of recorded hours for all the employees who work at its subsidiaries.[6] (*Id.*; Ex. F. 28-31).

Also indicative of Kindred's uniform corporate policy, which is contained in the employee handbooks, is Kindred's "Timekeeping" policy. (Ex. D.). It provides that when an employee did not have an uninterrupted meal break he/she "must report that to [their] supervisor and note the 30 minutes on [his/her] time card as worked time so that [he/she] will be paid." (Ex. D, D0001665-66). Notably, KHOI's representative was not aware of any training that Kindred provided to its employees about what to do when an employee did not have an uninterrupted meal break. (Ex. C. 181:3-8). During all relevant times, Kindred did not have a formal policy requiring its managers to monitor the actual time worked by an hourly employee each day to ensure the accuracy of an employee's time records. (Ex. F 110:21-24, 111:1-12).[7] It was the company-wide "culture" at Kindred to "get the work done" regardless of whether an employee had the opportunity to take an uninterrupted meal break. (Ex. G. 63:3-7).

## II. **THE NAMED PLAINTIFFS**

Plaintiff Peter Bergman was employed by Kindred as a registered nurse for four months in 2004 and again from February 2007 until July 2009. (Ex. N. 20:23-24, 22:5-10, 22-24, 23:1, 93:12-22, 100:14-18). He worked at three Kindred facilities: Central, Lakeshore and Montrose. (Ex. N. 242:21-24). Bergman was told during a day of orientation that meal breaks were not regularly scheduled and that he should "get them when you can". (Ex. N. 109:15-24, 110:1-16).

---

[6] Kindred maintains a depository of information regarding the number of hours each employee worked in a given pay-period. (Ex. C. 208:3-24, 209:1-24, 210:1-24). Kindred is capable of running a query of the database to see which employees in a facility had their electronic timecard adjusted (which would include if they submitted a Time Clock Feedback form for a missed meal break). (Ex. C. 176:13-16, 210:1-24; Ex. K. D0004404). KHOI process and maintain the payroll information for all of the employees including rate of pay, job classification, total hours worked, and address. (Ex. C. 19:7-9, 207-210). As such, from an informational standpoint, there is no impediment to gathering the necessary information to identify the ascertainable classes.

[7] In fact, the Manager's Guide to Human Resources is devoid of any requirement that managers ensure that an employee is compensated for an interrupted meal break. (Ex. M. D0002576).

During his employment with Kindred, Bergman frequently missed meal breaks. (Ex. N. 130:14-15, 142:2; 158:11-16). Bergman was often not able to take meal breaks because of his patients' clinical needs. (Ex. N. 152:16-24, 153:1-24). In addition, Bergman was frequently unable to take a break because there was no one else available to cover his patients. (Ex. N. 156:1-24, 157:1-19). Bergman's supervisors knew when those in his department missed meal breaks and "saw us" not taking breaks. (Ex. N. 146:8-14, 147:1-2, 150:23-24, 151:1-5, 169:7-9). Bergman informed supervisors when he missed meal breaks. (Ex. N. 146:21-24, 147:1-12, 151:10-22, 176:6-24, 177:1-8, 234:3-10, 236:21-24, 237:1-6). Importantly, he also witnessed other employees miss their meal breaks or having their meal breaks interrupted. (Ex. N. 183:21-24, 186:20-24, 187:1-6, 192:15-22, 193:10-24, 196:22-24, 197:1-20, 211:11-24, 212:1-7, 216:21-24, 217:1-12, 229:9-12). In addition to Plaintiffs, other members of the Classes voiced their concerns about missing meal breaks. (Ex. N. 211:11-23).

Plaintiff Bobbie Cason was employed by Kindred as a registered nurse at the Kindred facility located in Lincoln Park, Michigan from early 2007 until the facility was purchased by Vibra Healthcare in May, 2008. (Ex. O. 29:22-24, 30:1-8, 67:1-11, 137:19-24, 138:1-3). During her employment with Kindred, Cason estimates that she was not able to take a meal break during at least half of the shifts that she worked because of her workload. (Ex. O. 115:9-24, 116:1-13). Cason was often interrupted during meal breaks for reasons related to work, such as patient emergencies and medication administration. (Ex. O. 116:21-24, 117:1-24). Indeed, she complained about missing meal breaks. (Ex. O. 142:19-24; 144:1-4). In addition, she often observed the nurses in the acute ward eating with the patients. (Ex. O. 92:11-23). Further, Cason was aware that other employees missed their meal breaks because she heard them complain about it. (Ex. O. 141:7-17).

Plaintiff Lisa Smith is a current Kindred phlebotomist who has been employed by Kindred since April 2009. (Ex. G. 87:10-13). Smith worked at two Kindred facilities: Kindred Chicago Lakeshore and Kindred Northlake. (Ex. G. 58:7-10). She regularly worked during her meal breaks. (Ex. G. 177:22-24, 178:1-4). In fact, there were times when her meal break was interrupted or missed entirely due to work requirements. (Ex. G. 180:5-12). Her supervisor made clear that the doctors were not getting the results on-time and it was Smith's job to get those results to the doctor regardless of her meal break. (*Id*.). Her situation was not unique to her, as other employees complained to Smith about missing their meal breaks. (Ex. G. 102:21-24, 103:1, 126:2-19). Plaintffs and the Classes were uniformly harmed by this practice because missing a meal break is a part of the culture at Kindred. (Ex. G. 63:3-7).

The experiences of the named Plaintiffs are corroborated by the declaration of opt-in Plaintiff Amelia Wesseh who has been employed at Kindred's Chicago Lakeshore Hospital in the Lab Unit since August 2007, and has also worked at Kindred Hospital of Chicago North Lake. Ex. P ¶¶ 1, 3. She has been subject to the automatic meal break deduction policy and likewise has often been unable to take meal breaks or uninterrupted lunch breaks. Ex. P ¶¶ 5-6. She has observed other lab techs working through lunch and attests that management was aware that the staff was unable to take meal breaks, as evidenced by the manner in which her manager would call her back from lunch. Ex. P ¶¶ 7-8. She was never trained how to request and obtain time added back in when she worked through meal breaks, nor can she recall anyone in supervisory positions informing, emphasizing or otherwise reminding employees to do so. Ex. P ¶ 9.

Regardless of the location of the facility in which they worked, each Plaintiff was subjected to Defendants' uniform automatic meal break deduction, regardless of whether they

actually took a full, uninterrupted meal break. Further, each of the Plaintiffs was subject to the same practice of working through their meal breaks due to patient needs or staffing issues. Accordingly, Plaintiffs are similarly situated to each other, and, as further outlined below, to members of the proposed Classes.

## III. <u>PLAINTIFFS AND THE PROPOSED CLASSES ARE SIMILARLY SITUATED</u>

The duties of Kindred's registered nurses, as memorialized in the job description for registered nurses, are uniform system-wide. (Ex. I. D0001959-66). Likewise, the duties of a phlebotomist, as memorialized in the job description for phlebotomists, are uniform system-wide. (Ex. J. D0004290-96). Accordingly, Plaintiffs Bergman and Cason (both registered nurses) and Plaintiff Smith shared the same duties and responsibilities outlined in these respective job descriptions with other members of the Classes. While employed by Defendants, Plaintiffs and members of the Classes who worked at Kindred's facilities that employed an automatic meal break deduction policy were uniformly subject to the automatic meal break deduction policy. (Ex. C. 63:16-24, 64:1, 204:20-24, 205:1-6; Ex. O. 95:16-20; Ex. G. 208:11-15). In addition to sharing similar job duties with members of the Classes, Plaintiffs testified of knowledge of other members of the Classes similarly working through meal breaks. Accordingly, Plaintiffs, like all other putative class members, worked through a portion of their meal periods without receiving adequate compensation.

Further, Kindred created a system where its employees were not advised as to what constitutes a full, uninterrupted meal break, but nevertheless deducted 30 minutes from each employees' pay for each workday, without adequately implementing procedures to ensure that all of the compensable time of Plaintiffs and the Classes was recorded. Indeed, Kindred placed the burden on the employees to monitor their time, further ensuring that they received the benefit of uncompensated work. In addition, Defendants created a culture and instituted a policy

whereby employees were discouraged from informing their supervisors they missed a meal break. In short, the uniform system implemented by Defendants is structured so that it is virtually guaranteed that all members of the Classes perform off-the-clock work.

## IV. ARGUMENT

### A. Conditional Certification Under Rule 216(b) Of The FLSA Is Appropriate

The enforcement provision of the FLSA as set forth in Section 216(b), provides, in relevant part, that an action may be maintained against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Woods v. New York Life Ins. Corp.*, 686 F.2d 578, 580 (7th Cir. 1982); *see generally Alvarez v. City of Chicago,* 605 F.3d 445 (7th Cir. 2010). As the Seventh Circuit aptly noted, "[t]he conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011) (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010)).

This Court should conditionally certify this matter as a collective action pursuant to Section 216(b) and issue notice because, as set forth below, Plaintiffs have demonstrated that they are similarly situated to all of Defendants' hourly-paid employees at facilities that had the automatic meal break deduction policy in effect. *Woods*, 686 F.2d 578; *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544 (6th Cir. 2006). Plaintiffs have met their burden at the initial stage by providing not only substantial allegations, but also deposition testimony, a declaration and Defendant's own documents, to support Plaintiffs' contention that putative Collective Class members are similarly situated.

1.      **Courts in the Seventh Circuit Employ a Two-Stage Certification Process**

Certification of an FLSA action in this Circuit proceeds in two stages. *Jirak v. Abbott Laboratories, Inc.,* 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) ("[T]he majority of courts – including this Court – have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action.").[8] The first stage, which is the basis of Plaintiffs' motion, involves "conditionally certifying" a class for notice purposes.[9] *Collazo*, 2010 U.S. Dist. LEXIS 7661, at *4 (citing *Mielke v. Laidlaw Transit, Inc.,* 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004)). The first stage "should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers v. Hertz*, 624 F.3d 537, 555 (2d Cir. 2010); *Collazo*, 2010 U.S. Dist. LEXIS 7661, at *5 ("This initial certification is conditional, and courts use a 'lenient interpretation' of the term 'similarly situated'").

Plaintiffs meet this burden by making a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.,* 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003); *Ervin v. OS Rest. Servs., Inc*., No. 08-C-1091, 2009 U.S. Dist. LEXIS 56062, at *8 (N.D. Ill. July 1, 2009) ("[A] plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together."); *Witteman v. Wisconsin Bell, Inc*., No. 09-cv-440-vis, 2010 U.S. Dist. LEXIS 8845, at *2-*3 (W.D. Wis. Feb. 2, 2010) ("The requirements of

---

[8] *See also Collazo v. Forefront Ed., Inc.,* No. 08-cv-5987, 2010 U.S. Dist. LEXIS 7661, at *4 (N.D. Ill. Jan. 28, 2010); *Shiner v. Select Comfort Corp.*, No. 09-C-2630, 2009 U.S. Dist. LEXIS 116209 (N.D. Ill. Dec. 9, 2009); *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008); *Gambo v. Lucent Techs., Inc.*, No. 05-C-3701, 2005 U.S. Dist. LEXIS 37998 (N.D. Ill. Dec. 22, 2005); *Persin v. Careerbuilder, LLC*, No. 05-C-2347, 2005 U.S. Dist. LEXIS 29727 (N.D. Ill. Nov. 23, 2005); *North v. Board of Trustees of Illinois State Univ.*, 676 F. Supp. 2d 690 (C.D. Ill. 2009) .

[9] The second stage comes after "the completion of the opt-in process and further discovery." *Russell*, 575 F. Supp. 2d at 933 (*quoting Jirak*, 566 F. Supp. 2d at 847).

conditional certification are lenient because approval simply allows plaintiffs to provide notice to other potential class members so that they may make an informed decision whether to join the case").[10]  "The burden under the first step of the analysis is not heavy."  *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006); *Myers v. Hertz*, 624 F.3d at 555 (at the first stage, it "should remain a low standard of proof").  "[I]t is not until potential plaintiffs have been given a chance to 'opt-in' to the collective action and discovery is complete that the court more rigorously reviews whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action."  *Persin,* 2005 U.S. Dist. LEXIS 29727, at *5.  This makes sense for, as the Second Circuit recognized last year, it is not until the members of the collective action who join the case are before the court at the second stage that it can be  "determin[ed] whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."  *Myers*, 624 F.3d at 555 (emphasis added).

In applying the lenient standard in *Alvarez,* the Seventh Circuit held that certification is appropriate "[i]f common questions predominate, the plaintiffs may be similarly situated even though the recovery of any given plaintiff may be determined by only a subset of those common questions." 605 F.3d at 449.  As such, courts within the Northern District of Illinois "regularly allow Plaintiffs to pursue collective actions under the FLSA where they allege that an employer has an unwritten policy requiring its employees to perform uncompensated work 'off the clock.'"

---

[10] The lenient standard applied by courts at the first stage of certification (i) facilitates the broad remedial purpose of the FLSA and (ii) promotes efficient case management.  *See Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).  Indeed, applying the lenient first tier analysis is the most equitable, especially considering the fact that notice has not been disseminated and thus most class members are likely unaware of this lawsuit.  *See, e.g., Bouaphakeo v. Tyson Foods, Inc*., 564 F. Supp. 2d 870, 894-95 (N.D. Iowa 2008) ("The court is persuaded by the sentiments of other district courts that 'beginning with tier one of the analysis is the most equitable means of proceeding. . . .[S]hould the court bypass tier one entirely, some potential plaintiffs might not become aware of the lawsuit and would not have an opportunity to join the suit. . . .The potential prejudice to plaintiffs of bypassing tier one thus is significant'").

*Madden v. Corinthian Colleges, Inc.*, No. 08 C 6623, 2009 U.S. Dist. LEXIS 115331, at *7 (N.D. Ill. Dec. 8, 2009) (collecting cases).

Here, Plaintiffs have offered sufficient evidence that they are similarly situated with the putative collective action class members for this Court to authorize notice – *i.e.,* that all of Defendants' hourly-paid, non-exempt employees: 1) were subjected to an automatic meal break deduction (irrespective of whether they actually took a full, uninterrupted 30 minute meal break); 2) were required to submit a "missed punch" form in order to cancel the automatic meal break whenever they did not receive a full, uninterrupted meal break; 3) were, as a matter of corporate-wide policy, not adequately informed as to what constitutes an "uninterrupted meal break;" 4) were subjected to Defendants' uniform failure to monitor when employees did not receive their full, uninterrupted meal break even though the time for such meal break was automatically deducted; and 5) were uniformly subjected to Defendants' attempt to shift the burden for accurately accounting for its employees' meal time to the employees themselves.

Plaintiffs have established a "factual nexus" between their claims and the individuals they seek to notify. *See Ervin*, 2009 U.S. Dist. LEXIS 56062, at *8; *Clarke v. Convergys Customer Mgmt. Group, Inc.*, 370 F. Supp. 2d 601, 605 (S.D. Tex. 2005).[11] As a result of Defendants' standardized auto-deduct policy and uniform failure to accurately monitor employees' time, Plaintiffs have met the standard for granting conditional collective certification, just as other plaintiffs have done so in other cases. *See, e.g.*, *Nicholson v. UTI Worldwide, Inc.*, No. 3:09-CV-722-JPG, 2011 U.S. Dist. LEXIS 7612 (S.D. Ill. Jan. 26, 2011); *Sharpe v. APAC Customer Servs., Inc.*, No. 09-cv-329-bbc, 2010 U.S. Dist. LEXIS 1671 (W.D. Wis. Jan. 8, 2010); *Madden v. Corinthian Schools, Inc.*, 2009 U.S. Dist. LEXIS 115331; *Lindberg v. UHS of Lakeside, LLC,*

---

[11] Any argument that conditional notice is inappropriate because the named Plaintiffs and collective action members may perform "different work" is of no import at this stage, and irrelevant to the claims of this case.

No. 2:10-cv-2014-JPM, 2011 U.S. Dist. LEXIS 6711 (W.D. Tenn. Jan. 21, 2011) (collecting cases); *see also* Sections I-III *supra*.

### 2.     <u>Defendants' Meal Break Deduction Policy Does Not Comply with the Law</u>

At the first stage, the merits of Plaintiffs' claims are not at issue in determining the propriety of whether to "conditionally" certify this Collective Class. *Anyere v. Wells Fargo, Co.,* No. 09-cv-2769, 2010 U.S. Dist. LEXIS 35599, at *12 (N.D. Ill. April 12, 2010) ("Nor is it proper at this stage for the court to make such a merits determination, judging the credibility of each parties' declarants"); *Russell*, 575 F. Supp. 2d at 935 n.3 ("the Court's role at this stage is not to assess any party's credibility"). However, Plaintiffs do expect Defendants to claim that their actions did not violate the law. A brief discussion of Defendants' meal break deduction policy demonstrates how all hourly employees are similarly-situated with respect to the policy, were harmed by the policy (regardless of the policy's legality), and are thus entitled to notice of this action.

Defendants' meal break deduction policy violates the FLSA because (i) Defendants' improperly attempt to shift the burden for accurately accounting for its employees' meal time to the employees themselves and (ii) Defendants do not "ensure" that employees actually stop working during their meal breaks, in each instance where an automatic meal break deduction occurs. Further, Defendants actually encourage their employees to work off-the-clock and make their employees feel like a "burden" if they advise management of missed meal breaks. (Ex. G. 47:21-24). If the employer's policy permits its employees to work through their meal period – and certainly if it knows and encourages them to do so – it is simply improper for the employer to automatically deduct a "meal period" from each employees' work time records. The obvious result is that employees are not paid for all the time they work.

12

Under the FLSA, all time which employees "suffer[ed] or permit[ted]" to work must be compensated. 29 U.S.C. § 203(g). Specifically, the regulations state: "Work not requested but suffered or permitted is work time. . . .The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time." 29 C.F.R. § 785.11. As such, "it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed." 29 C.F.R. § 785.13. Accordingly, if employers know or have reason to know that employees are working, such time is compensable. *See Reich v. Southern New Eng. Telecomms. Corp.*, 121 F.3d 58 (2d Cir. 1997); *see also* 29 C.F.R. § 825.105 ("[m]ere knowledge by an employer of work done for the employer by another is sufficient to create" liability); 29 C.F.R. § 785.11 (if an employer knows or has reason to believe that an employee is continuing to work the time is working time).

The United States Department of Labor ("DOL") has issued particular guidance directed to health care employers on the issue of meal break deductions. *See* Wage and Hour Division, U.S. Dep't of Labor, Factsheet No. 53, The Health Care Industry and Hours Worked (2009). Notably, the Department of Labor instructs healthcare employers who choose to automatically deduct 30-minutes per shift that *they must ensure* that the employees are receiving the full meal break. *See id.*; 29 C.F.R. § 785.19. Thus, Defendants' practice of failing to "ensure" that employees receive a full meal break when automatically deducting time for a meal break necessarily means the Defendants are violating the FLSA. As Plaintiffs explained during their depositions, they and other members of the Collective Class routinely work through their meal breaks. Indeed, due to the nature of the job and the patients they cared for, Plaintiffs simply could not be relieved of their duties. Thus, due to their uniform experiences, Plaintiffs and members of the Collective Class could not take a full, uninterrupted meal break. As Plaintiff

Smith testified, supervisors interrupted employees' meal breaks, and other employees at her facility complained about the inability to take a meal break at Kindred. (Ex. G. 126:5-19, 217:19-24, 128:1-4). In addition to her own experience, Plaintiff Cason also testified that she was aware that other employees missed their meal breaks because she heard them complain about it. (Ex. O. 141:7-17, 219:12-17). Respectfully, Defendants' shifting of the burden to employees to ensure that they do not work through a meal break falls woefully short of complying with the DOL's requirement of ensuring that employees who are subjected to an automatic deduction policy receive a full, uninterrupted meal break. Defendants' burden shifting was further compounded by Defendants' failure to adequately advise and train employees regarding what constituted a full, uninterrupted meal break. Such issues warrant conditional collective action certification. *See Cook v. St. John's Health, et al., No.* 10-10016 (E.D. Mich. March 3, 2011) (Order and Transcript attached hereto as Ex. Q).

Indeed, an Illinois district court recently granted collective certification where it found that defendants' lawful policy – as applied – caused employees to be improperly undercompensated. *See Nicholson*, 2011 U.S. Dist. LEXIS 7612 (granting collective certification to nationwide class of forklift operators where plaintiffs demonstrated, through affidavits, that they sometimes worked pre/post shift and through their unpaid meal breaks). Moreover, Defendants' uniform policy on its face invariably led to uncompensated work being performed. As noted above, any meal break shorter than 30 minutes was "***rounded up* to 30 minutes**, thus still enforcing the 30-minute auto-deduct." (Ex. L. D0001464) (emphasis in original); *see also* (Ex. C. 221:21-222:3). As such, according to Defendants' own policy, any employee who ate and returned to work would nonetheless be subjected to a 30 minute deduction (even if their meal break was shorter in duration).

14

Further, the DOL has explicitly stated that an employer must pay for time an employee works at a health care facility during a meal break, even when the employee fails to record such time as required by the employer's policy.

> Q1: If an employee fails to take a meal break and does not notify the manager that he did so in direct violation of the policy, is additional … compensation due…?

> A1: Work not requested but suffered or permitted is work time.' 29 C.F.R. § 785.11. Thus, the employer must compensate the employee for all hours worked including the time worked during the missed meal period.

U.S. Dep't of Labor Opinion Letter, FLSA 2008-7NA, May 15, 2008.

This rule is entirely consistent with the statutory and regulatory language requiring payment of any time the employee was "permitted" to work (instead of being limited to the amount of "recorded" time). Any other approach would create an opportunity for employers to intimidate their employees into working without compensation, something that the FLSA was explicitly crafted to avoid. Accordingly, the issue presented in this case is whether the Defendants' common policy "ensured" that all of the employees compensable time was properly recorded.

Defendants' attempt to shift the statutory responsibilities to their employees regarding accounting for their meal breaks is itself also adequate grounds for collective certification. *See Camesi v. Univ. of Pittsburgh Med. Ctr.,* No. 09-85J, 2009 U.S. Dist. LEXIS 40571, at *11 (W.D. Pa. May 14, 2009) (granting collective certification and holding that the medical center's "arguable attempt to shift statutory responsibilities to [its] workers constitutes an 'employer policy' susceptible to challenge at this stage in the proceedings"); *Lindberg*, 2011 U.S. Dist. LEXIS 6711.

### 3. The Collective Class Was Subject to Defendants' Uniform Meal Break Deduction Policy

Defendants' failure to "ensure" that employees completely stop working during their meal breaks, necessarily impacts all Collective Class members in the same way. The obvious result is that employees are not paid for all the time they work.

Numerous courts within and outside the Seventh Circuit have found conditional certification appropriate on facts indistinguishable from this case. For example, in a virtually identical case, a district court found that plaintiff satisfied the requirements to bring a collective action, and certified the FLSA collective action. *Lindberg*, 2011 U.S. Dist. LEXIS 6711, at *23 (granting collective certification where defendants' auto-deduct policy "placed the burden of correction on hourly employees"); *see also Russell*, 575 F. Supp. 2d 930 (granting conditional certification where plaintiff alleged that defendant required hourly paid employees to work through unpaid meal breaks); *Jones-Turner v. Yellow Enter. Sys., LLC,* No. 3:07-cv-218-S, 2007 U.S. Dist. LEXIS 79414 (W.D. Ky. Oct. 24, 2007); *Cook,* No. 10-10016 (Ex. Q).

The same outcome was reached in the also substantially identical case of *Kuznyetsov v. West Penn Allegheny Health System, Inc.*, No. 2:09-CV-00379-DWA, 2009 U.S. Dist. LEXIS 47163 (W.D. Pa. June 1, 2009). In *Kuznyetsov,* plaintiffs brought a collective action against a health care system with several hospital facilities. There, as here, plaintiffs alleged that defendants violated the FLSA as a result of its automatic meal break deduction policy. In granting plaintiffs' motion for conditional certification, the district court, rejected defendants' argument that individualized inquiries were necessary:

> Defendants argue that [p]laintiffs' claims are not suitable for collective action treatment because they require individualized inquiries …. At this initial stage, there is no dispute that the policies affect all non-exempt employees, regardless of job title or work location. Any dissimilarities may be reevaluated in the second stage of class certification, after discovery is complete.

*Kuznyetsov,* 2009 U.S. Dist. LEXIS 47163, at *16-17. In finding that the plaintiffs' claims were suitable for collective action treatment, the court relied upon the defendants' own written policy, creating the automatic meal break deduction, and its improper "shift" of responsibility to the hospital employees. *Id.* at *15. This is precisely the conduct complained of by Plaintiffs.

Indeed, the *Kuznyetsov* decision is just one of many decisions from courts across the country that have granted conditional certification in analogous actions involving the healthcare industry. *See, e.g., Lindberg,* 2011 U.S. Dist. LEXIS 6711 (collecting cases); *Cook,* No. 10-10016 (Ex. Q).

Given Defendants' general assertion that its corporate policies/guidelines were left up to the individual facility, Defendants may argue that these localized policies were not centrally implemented and enforced. This, however, is contrary to both the record and the case law. First, KHOI's corporate representative testified that, from January 2007 to May 2010, for all facilities nationwide that utilized the automatic deduction policy, the same automatic deduction policy applied to all hourly employees within those facilities. (Ex. C. 63:16-24, 64:1, 204:20-24, 205:1-6). Further, the automatic meal break deduction called for the automatic rounding up to 30 minutes for any meal break that was shorter than 30 minutes. (Ex. L. D0001464; Ex. C. 221:21-222:3). Second, even when defendant's policy is arguably "decentralized," courts still grant conditional certification in situations where the policy, even if not spawned from a centralized authority, is nevertheless commonly adopted across the class. This makes inherent sense under the FLSA's structure of providing for notice and then, at the second stage, determining whether the collective action members who opt-in are, "in fact", as the Second Circuit stated last year in *Myers*, similarly situated to the named Plaintiffs. *See also Gambo*, 2005 U.S. Dist. LEXIS 37998, at *17 (rejecting defendant's claims that decentralized management made it "impossible"

17

to maintain a common plan or policy); *see also Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 298 (N.D. Cal. 1991) (issuing notice despite defendant's claims that staffing decisions were "highly decentralized" and that employees comprising class were employed at 112 different locations in 74 different jobs).[12]

Accordingly, dissemination of notice is appropriate to provide Kindred's employees with the opportunity to opt-in should they believe, upon receiving the notice, that they have a claim.[13]

## B.    Certification Under Fed. R. Civ. P. 23 Is Also Appropriate

Under Rule 23, Plaintiffs Peter Bergman and Lisa Smith seek certification of the Rule 23 Classes  to recover all unpaid wages under the Illinois Minimum Wage Law, ("IMWL"), 820 ILCS 105/1 *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS

It is well-established that "Illinois courts contemplate class treatment for IMWL and IWPCA claims." *Sorensen, et al., v. CHT Corp.*, No. 03 C 1609, 2004 U.S. Dist. LEXIS 3729, at *36 (N.D. Ill. March 9, 2004).  Rule 23 is to be liberally construed and read to favor the maintenance of class actions.  *Cannon v. Nationwide Acceptance Corp.*, No. 96 C 1136, 1997 U.S. Dist. LEXIS 3517, at *3 (N.D. Ill. March 24, 1997) (*citing King v. Kansas City S. Indus.*, 519 F.2d 20, 25-26 (7th Cir. 1975)).  In evaluating a Rule 23 motion, a court should not make a formal determination based on the merits of plaintiffs' claims.  *See Schleicher v. Wendt,* 618

---

[12] Indeed, courts have even granted conditional certification where the employees worked for different employers, but plaintiffs demonstrated that they were all subject to a common policy.  *See, e.g., Manning v. Goldbelt Falcon, LLC*, No. 08-3427 (JEI), 2010 U.S. Dist. LEXIS 104029, at *12 (D.N.J. Sept. 29, 2010) (conditionally certifying a plaintiff class of employees of "three separate but related employers" based on evidence of a common pay policy).

[13] Under the provisions of the FLSA, the statue of limitations is not tolled for any individual until that individual has filed a written consent to join the action with the court. 29 C.F.R. § 790.21(b)(2).  Thus, in order to protect the interests of the collective action members, prompt dissemination of notice is essential.  *See Shiner*, 2009 U.S. Dist. LEXIS 116209, at *15 (finding allegations support sending of notice to broadest class possible for three year period because potentially all class members subject to same corporate policies); *see also Herrera v. Unified Mgmt. Corp.*, No. 99 C 5004, 2000 U.S. Dist. LEXIS 12406, at *5 (N.D. Ill. Aug. 18, 2000).

F.3d 679, 685 (7th Cir. 2010) ("Although we concluded in *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001), that a court may take a peek at the merits before certifying a class, *Szabo* insisted that this peek be limited to those aspects of the merits that affect the decisions essential under Rule 23").

Numerous class actions have been certified for "off-the-clock" violations of state wage laws.[14] Indeed, several directly analogous wage cases regarding claims for failure to compensate for all hours worked due to an automatic meal break deduction policy have been certified under analogous state wage and hour laws. *See Meyers v. Crouse Health System, Inc.*, *et al.,* No. 08-cv-1221 (N.D.N.Y. Mar. 8, 2011) (Attached hereto as Ex. R); *Colozzi, et al. v. St. Joseph's Hospital Health Center, et al.,* No. 08-cv-1220 (N.D.N.Y. Mar. 8, 2011) (Attached hereto as Ex. S); *Hamelin, et al. v. Faxton-St. Luke's Healthcare, et al.,* No. 08-cv-1219 (N.D.N.Y. Mar. 8, 2011) (Attached hereto as Ex. T); *see also Berger v. Cleveland Clinic Found.,* No. 1:05-CV-1508, 2007 U.S. Dist. LEXIS 76593 (N.D. Ohio. Sept. 29, 2007) (granting class certification for interrupted meal breaks).

### 1.     Rule 23(a)(1) – Numerosity

Plaintiffs' proposed Rule 23 Classes clearly satisfies the numerosity requirement. Pursuant to Rule 23(a)(1), numerosity requires that the proposed class must be so numerous that joinder is impracticable. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992). Though there is no bright line test for numerosity, a class with as few as 40 members may meet the numerosity requirement, and courts rely on common sense to determine whether

---

[14] *See, e.g., Kernats v. Comcast Corp.,* No. 09 C 3368, 2010 U.S. Dist. LEXIS 112071 (N.D. Ill. Oct. 20, 2010); *Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 443 (W.D. Wis. 2008); *Belbis v. County of Cook*, No. 01 C 6119, 2002 U.S. Dist. LEXIS 22426, at *20-21 (N.D. Ill. Nov. 13, 2002); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 U.S. Dist. LEXIS 17832, at *28 (N.D. Ill. Nov. 30, 2000).

the numerosity requirement has been met. *Redmon v. Uncle Julio's of Ill., Inc.*, 249 F.R.D. 290, 294 (N.D. Ill. 2008).[15] Here, there were five operational Kindred hospitals in Illinois (Chicago-North, Chicago-Central, Chicago-Lakeshore, Chicago-Northlake, and Sycamore) during the relevant class period, at which there can be no dispute there were more than 40 employees who were subjected to the automatic lunch deduction policy. As such, common sense dictates that the numerosity prong of Rule 23(a) has been amply satisfied.[16]

### 2. __Rule 23(a)(2) - Commonality__

Rule 23(a)(2) requires that a case to involve common questions of law or fact. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998), *citing Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). There is a low threshold for satisfying the commonality prerequisite and where a defendant directs standardized conduct toward the class, commonality is typically found. *See Kernats*, 2010 U.S. Dist. LEXIS 112071, at *16 ("standardized conduct on the part of [defendant] are enough to meet the relatively low hurdle of proving commonality"); *Keele*, at 594 (holding that "a common nucleus of operative facts" exists in the face of standardized conduct toward the proposed class). "Not all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members." *Walker v. Bankers Life & Cas. Co.*, No. 06 C 6906, 2007 U.S. Dist. LEXIS 73502, at *10 (N.D. Ill. Oct. 1, 2007) *quoting Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D. Ill. 1986). Even where there are differences in the details of the class members' claims, "the essence of them all

---

[15] It is not necessary that the precise number of class members be known. *Patrykus v. Gomilla*, 121 F.R.D. 357, 360-61 (N.D. Ill. 1988).

[16] *See Olden v. LaFarge Corp.,* 203 F.R.D. 254, 269 (E.D. Mich. 2001), *aff'd*, 383 F.3d 495 (6th Cir. 2004); *Civic Ass'n of the Deaf of NYC, Inc. v. Giuliani,* 915 F. Supp. 622, 632 (S.D.N.Y. 1996) (court may make "common sense assumptions" to support a finding of numerosity); Alba Conte & Herbert Newberg, *Newberg on Class Actions* ß 3:3, at 225 (4th ed. 2002) ("a common sense approach is contemplated by *Rule 23*").

will be the alleged unlawful failure" of Defendants to pay for work performed during meal breaks, satisfying the commonality requirement. *Ladegaard*, 2000 U.S. Dist. LEXIS 17832, at *15.

Here, each class member is, or was, employed by Defendants and, prior to May 2010, subject to the same standardized conduct – a 30-minute auto-deduct policy. Among the common questions are whether, (a) Defendants violated the IMWL and IWPCA or alternatively, were unjustly enriched, by enforcing an automatic meal break deduction policy without ensuring that employees were compensated for all time worked, and (b) Defendants failed to pay Plaintiffs and the class members for all their hours worked since they regularly performed compensable work during their meal breaks. Plaintiffs satisfy the commonality requirement of Rule 23(a).

### 3. Rule 23(a)(3) - Typicality

The third element of Rule 23(a) requires that the claims or defenses of the class representative party be typical of the claims or defenses of the class. Rule 23(a)(3) is satisfied if the representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the representative's] claims are based on the same legal theory." *Clark v. Retrieval Masters Creditors Bureau, Inc.*, 185 F.R.D. 247, 249 (N.D. Ill. 1999), *quoting De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Typicality exists where the class was injured by an allegedly common practice because the focus is on the defendants' conduct and the application of the same legal theory to the claims of Plaintiffs and all class members.[17] *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *De La Fuente*, 713 F.2d at 232. Here, the typicality prong is satisfied because Plaintiffs' claims

---

[17] Notably, typicality "requires neither complete coextensivity nor even identity of claims." *Owner-Operator Independent Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*, 231 F.R.D.280, 282 (N.D. Ill. 2005).

arise from the same conduct which affected all class members – namely Defendants' automatic meal break deduction policy resulting in uncompensated work being performed.

### 4. Rule 23(a)(4) and (g) - Adequacy of Representation and Appointment of Counsel

The fourth element of Rule 23(a) requires the representative party to fairly and adequately protect the interests of the class. This requirement is evaluated through three factors: (1) the plaintiff "cannot have antagonistic or conflicting claims with other members of the class;" (2) the plaintiff "must have a 'sufficient interest in the outcome to ensure vigorous advocacy;'" and (3) the plaintiff's attorney "must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 317 (N.D. Ill. 1995), *quoting Riordan*, 113 F.R.D. at 64.

Here, there is no conflict or antagonism between Plaintiffs and the class members given the identical nature of their claims, Plaintiffs have a clear interest in the successful outcome of the lawsuit – as demonstrated by the fact that they have sat for their deposition and responded to written discovery -- and Plaintiffs' attorneys are active practitioners in good standing in the various courts in which they practice, and whose collective experience, diligence, and commitment to this litigation will more than adequately protect the interests of the class. They also have particular experience and success in collective and class actions, including wage and hour cases. *See, e.g.*, D.E. 65-69.[18] Under these circumstances, the adequacy requirement is clearly satisfied.

---

[18] In addition to moving for appointment of counsel as class counsel, Plaintiffs also request that this Court designate Marvin Miller, of Miller Law, as liaison counsel. Should the court deem such submissions necessary, plaintiffs' counsel would be happy to submit more fulsome accounts of each firms' wage and hour experience. However, it should be noted that two of the firms of record in the instant matter, Faruqi & Faruqi, LLP and Carlson Lynch, are also counsel of record in the directly analogous *Cook* matter. Ex. Q.

### 5.     Rule 23(b)(3) -- Predominance/Superiority

In addition to satisfying Rule 23(a), Plaintiffs must also meet one of the provisions of Rule 23(b).  Here, Plaintiffs easily meet the requirements of Rule 23(b)(3).

### (a)     Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that common questions of law or fact predominate the inquiry; this criterion is met when there is a common factual link between all the class members and the defendants for which the law provides a remedy.  *See Daley v. Provena Hospitals*, 193 F.R.D. 526, 529 (N.D. Ill. 2000).[19]  Where a uniform violation is alleged, "there can be no question that this alleged common practice will be the principal issue of the litigation," and common questions involving payroll practices, such as failure to provide overtime pay, meet the predominance inquiry.  *Barragan v. Evanger's Dog and Cat Food Co., Inc.*, 259 F.R.D. 330, 335 (N.D. Ill. 2009); *see also Ladegaard*, 2000 U.S. Dist. LEXIS, at *25; *Kernats*, 2010 U.S. Dist. LEXIS 112071, at *21 (concluding questions of company-wide practice to preclude payment of overtime predominated over variations in methods used to effectuate policy, such as how individual supervisors operated).  Here, whether all class members were adversely affected by the automatic meal break deduction policy, including the one-way rounding of time, will invariably predominate the inquiry.[20]

---

[19] "Considerable overlap exists between the court's determination of commonality and a finding of predominance.  A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts."  *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006) (internal citations omitted).

[20] "Courts have not traditionally found individualized questions of damages to prevent class certification." *Ross v. RBS Citizens, N.A. d/b/a Charter One*, No. 09-cv-5695, 2010 U.S. Dist. LEXIS 107779, at *22 (N.D. Ill. Oct. 8, 2010) (collecting cases). "To the extent such inquires will be necessary to a determination of liability, solutions can be devised to make the inquiry fair, efficient, and manageable." *Id.*

### (b)    A Class Action is Superior to Other Available Adjudication Methods

This proposed class action is also the superior and most efficient means of determining the propriety of Defendants' uniform conduct under Illinois state law.  Under Rule 23, the Court is to determine the best available method for resolving claims in keeping with judicial economy, efficiency, and consistency.  *See Scholes*, 143 F.R.D. at 189.  In making a determination of superiority, a class action is, "the most efficient method of adjudicating the claims of numerous class members who, largely unsophisticated and uninformed of their rights, might not otherwise possess the initiative to commence an action on their own behalf." *Davis v. Suran*, No. 98 C 0656, 1998 U.S. Dist. LEXIS 12233, at *11 (N.D. Ill. Aug. 3, 1998).  As shown, Illinois courts have long recognized the appropriateness of adjudicating IMWL and IWPCA claims as class actions.  *See, e.g., Sorensen*, 2004 U.S. Dist. LEXIS 3729, at *36; *see also Kernats,* 2010 U.S. Dist. LEXIS 112071, at *24.

Unless this case proceeds as a class action, numerous class members will, as a practical matter, be left without a remedy and Defendants will have received a windfall from their violations of Illinois state law.  Discovery costs alone dwarf the potential recovery.  This is truly a case where to deny certification and "permit [Defendants] to contest liability with each claimant in a single separate suit...would...give [Defendants] an advantage which would be almost equivalent to closing the door of justice to all small claimants." *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir. 1941); *accord In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 732 (N.D. Ill. 1977).  Certification will help equalize the ability of the Plaintiffs and the Rule 23 Classes to prepare and pay for the advocacy of their rights.

The availability of an FLSA claim does not militate against a finding of superiority under Rule 23(b)(3).  In *Ervin*, 632 F.3d at 973, the Seventh Circuit addressed whether employees who

institute a collective action under the FLSA may at the same time litigate supplemental state law claims under Rule 23(b)(3). The Court stated, "there is no categorical rule against certifying a Rule 23(b)(3) state-law class action in a proceeding that also includes a collective action brought under the FLSA," finding "no insurmountable tension between the FLSA and Rule 23(b)(3)." *Id.* at 974. Moreover, the court found nothing to suggest "that the FLSA is not amenable to state-law claims for related relief in the same federal proceeding." *Id.* at *977. As such, a class action is the superior method for adjudicating the Illinois' class members' state law claims. *See Ladegaard,* 2000 U.S. Dist. LEXIS 17832, at *26.[21] Indeed, the IWPCA class (and alternative unjust enrichment class) have no overlap whatsoever with the FLSA class – inasmuch as these Illinois state claims are only for individuals who worked less than forty hours in a week, necessarily precluding any possibility of overlap with the proposed FLSA collective class.

## V. <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs have met all of the requirements of conditional collective action certification under 29 U.S.C. § 216(b) and the requirements of Fed. R. Civ. P. 23(a) and (b)(3). Plaintiffs respectfully request that this Court order the prompt dissemination of notice so that prospective collective action members can opt-in to this action and the Rule 23 Classes can receive notice of the pendency of this action.

---

[21] The *Ladegaard* court noted that the potential for any overlap between FLSA and state claims militated in favor of having the claims brought in one forum – as opposed to separate state and federal courts. *Ladegaard*, 2000 U.S. Dist. LEXIS 17832, at *27.

Dated: May 18, 2011

Respectfully submitted,
Plaintiffs

By: s/*Marvin A. Miller*
Marvin Miller
Matthew E. Van Tine
MILLER LAW LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
Telephone: (312) 332-3400
Facsimile: (312) 676-2676
Email: mmiller@millerlawllc.com
          mvantine@millerlawllc.com


Gerald D. Wells III
Kendall S. Zylstra
Gerald D. Wells, III
Stephen Connolly
FARUQI & FARUQI, LLP
100 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Tel: 215-277-5770
Fax: 215-277-5771
Email:  kzylstra@faruqilaw.com
          jwell@faruqilaw.com
          sconnolly@faruqilaw.com


Gary Lynch
CARLSON LYNCH LTD
36 N. Jefferson Street
P.O. Box 7635
New Castle, PA 16107
Tel: 724-656-1555
Fax: 724-656-1556
Email: glynch@carlsonlynch.com
          bcarlson@carlsonlynch.com

Seth R. Lesser
Fran L. Rudich
Michael J. Palitz
KLAFTER OLSEN & LESSER LLP
Two International Drive
Suite 350
Rye Brook, NY 10573
Tel:  914-934-9200
Fax:  914-934-9220
Email:seth@klafterolsen.com
frudich@klafterolsen.com
mpalitz@klafterolsen.com

Lance A. Raphael
Stacy M. Bardo
The Consumer Advocacy Center, P.C.
180 West Washington
Suite 700
Chicago, IL 60602
Phone: 312-782-5808
Fax: 312-377-9930
Email:  lance@caclawyers.com
stacy@caclawyers.com

## CERTIFICATE OF SERVICE

I, Marvin A. Miller, hereby certify that I used the CM/ECF system to electronically file pursuant to order dated May 17, 2011, the accompanying *Plaintiffs' Motion For Conditional Certification and Judicial Notice Pursuant to Section 216(b) of the Fair Labor Standards Act and Class Certification of the Illinois State Classes Pursuant to Fed.R.Civ.P. 23* and *Plaintiffs' Memorandum of Law in Support* on May 18, 2011, which provides notice to all counsel of record.

/s/ Marvin A. Miller
Marvin A. Miller