IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETER BERGMAN, et al., etc., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 10 C 191 |
| | ) | |
| KINDRED HEALTHCARE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

# OPINION AND ORDER

This is a nationwide collective action alleging violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and an Illinois state law

putative class action based on the application of an automatic 30-minute meal

break deduction policy without ensuring that employees do not work through all or

part of their meal break.  This court has original jurisdiction over plaintiffs' FLSA

claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.  Jurisdiction over the

state law claims purportedly exists pursuant to the Class Action Fairness Act of

2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because the Illinois plaintiffs and

members of the purported classes include citizens of a state different than one or

more defendants and the matter in controversy exceeds the sum or value of
$5,000,000. However, it would appear that jurisdiction under CAFA is excluded
because more than two-thirds of the class members are citizens of Illinois,[1]
defendant Kindred Chicago Lakeshore is a citizen of Illinois, and the principal
injuries and related conduct occurred in Illinois. 28 U.S.C. § 1332(d)(4)(A). But
even if that exclusion applies, this court would have supplemental jurisdiction of
the state law claims pursuant to 28 U.S.C. § 1367(a). ***Daprizio v. Harrah's Las
Vegas, Inc.***, 2010 WL 3259920 *2 (D. Nev. Aug. 17, 2010). *But compare **Beye v.
Horizon Blue Cross Blue Shield of N.J.***, 568 F. Supp. 2d 556, 572 n.22 (D.N.J.
2008) (*dictum*).[2]

     Plaintiff Peter Bergman ("Bergman") filed this action against Kindred
Healthcare, Inc., Kindred Chicago Lakeshore, and Doe defendants 1-10.
Subsequently two other actions (one filed in this court and one transferred from the
Eastern District of Michigan) were consolidated with this action adding plaintiffs

---

[1]Employees at Illinois locations could be citizens of other states, but it is
unlikely than more than one-third of them are.

[2]Section 1332(d)(4) provides that a "district court shall decline to
exercise jurisdiction under [§ 1332(d)(2)]" if the conditions stated in subsection
(d)(4)(A) are met. It does not, as indicated in ***Beye***, provide that jurisdiction
cannot be exercised if a different basis for jurisdiction exists.

Bobbie Cason ("Cason") and Lisa Smith ("Smith"). *See* Docket Entry 35, 45. Thereafter leave to file an amended complaint was granted adding defendant Kindred Healthcare Operating, Inc. ("KHOI"). As a result of the consolidations and amendments the defendants named in the Third Amended Complaint are Kindred Healthcare, Inc. ("KHI"); Kindred Healthcare Operating, Inc. ("KHOI"); Kindred Chicago Lakeshore ("Lakeshore"), a subsidiary of KHOI; and Kindred Hospitals East, LLC ("KHE"), which operates Kindred-Detroit. ( For convenience the defendants will be referred to collectively as "Kindred.") Mira Bhuiyan, Jennifer Cabulong, Kenya Hawk, Ben Philip Ginsberg, Amelia Wesseh, and Lisa Pigecella subsequently consented to join the case. *See* Docket Entry 75, 76, 80, 89, 103. In 2012, Cason withdrew her personal claims without prejudice.

Kindred has approximately 55,000 employees in the United States. On January 12, 2007, there were approximately 10,000 hourly employees working at 74 Kindred facilities in 23 different states. Kindred Healthcare is the largest diversified provider of post-acute care services in the United States. Entities owned by KHOI are divided into three divisions: the Hospital Division, the Nursing Center, and the Rehabilitation Division.

It is alleged that this action is filed on behalf of phlebotomists, business office managers, admission coordinators and officers, receptionists, secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, nurses' aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admission officers, student nurse technicians, trainers, transcriptionists, and all other non-exempt individuals who are employed at any of defendants' facilities and subject to the automatic meal break deduction policy.

Because of the represented magnitude of this case and the expenses it will and could impose, plaintiffs were granted more than 11 months to take discovery with respect to the certification issue. They have taken three Rule 30(b)(6) depositions and served two sets of interrogatories and requests for the production of documents. Defendants have produced over 5,800 pages of documents. Three requests for the extension of discovery have been granted. *See* Docket Entry 26, 40, 57, 88. Defendants have submitted 34 declarations of putative class members

who represent 25% of the employees at Lakeshore. The parties have also submitted opposing charts analyzing the information gathered. All of this has been accompanied by over-sized briefs.[3]

The case is now before the court on plaintiffs' motion for conditional certification of a collective action in order to issue a notice to opt-ins pursuant to the FLSA and for certification of classes, pursuant to Fed. R. Civ. P. 23, for their state law claims. The state law claims are under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105, and the Illinois Wage Payment Collection Act ("IWPCA"), 820 ILCS 115, or, alternatively, under Illinois common law for unjust enrichment. Plaintiffs have also moved for equitable tolling of the FLSA statue of limitations applicable to opt-ins. Defendants moved for summary judgment, but briefing on that motion was held in abeyance.

Plaintiffs propose an IMWL Class defined as:

> All persons employed by Defendants at any of their Illinois facilities at any time since January 12, 2007, who worked in excess of forty (40) hours in any individual workweek, whose pay was subject to an automatic 30-minute meal period deduction even when they performed compensable work during the unpaid "meal break," and who were not paid for all

---

[3]Plaintiffs also sought leave to appeal to the United States Court of Appeals for the Seventh Circuit. *See In re Bergman*, No. 10-8010 (7th Cir. June 29, 2010) (denying leave to appeal).

overtime worked, including such uncompensated meal break time, at a rate of one and one-half times their regular rate of pay.

Plaintiffs' proposed IWPCA Class definition is:

All persons employed by Defendants at any of their Illinois facilities at any time since January 12, 2000, who worked fewer than forty (40) hours in any individual workweek, whose pay was subject to an automatic 30-minute meal period deduction even when they performed compensable work during the unpaid "meal break," and who were not paid for all time worked, including such uncompensated meal break time.

Alternatively, plaintiffs move for certification of a common law unjust enrichment claim class.

Today's ruling will only resolve FLSA collective action issues.

The FLSA provides that an action may be maintained against an employer by any one or more employees in behalf of himself and other employees similarly situated. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 575, 580 (7th Cir. 1982); *Alvarez v. City of Chicago*, 605 F. 3d 445, 448 (7th Cir. 2010). The conditional certification process is a procedure used in an FLSA collective action to determine whether there is sufficient merit in the charges to warrant that notice of eligibility to participate be sent to similarly situated employees in order that they be given an

opportunity to opt into a collective action. *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). At this stage of the proceedings, plaintiffs must make a modest factual showing of common, unlawful conduct and provide some indication of harm to employees. *Gibbs v. New Ashley Stewart, Inc.*, 2013 WL 1858561 *1 (N.D. Ill. May 2, 2013); *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012).

The certification of an FLSA collective action typically proceeds in two stages. The first stage, which is now before the court, involves conditionally certifying a class for notice purposes. There is a low standard of proof. *Myers v. Hertz, Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *Carter v. Ind. State Fair Comm'n*, 2012 WL 4481348 *4 (S.D. Ind. Sept. 28, 2012); *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 433 (S.D. Ill. 2012). *Adair v. Wis. Bell, Inc.*, 2008 WL 4224360 *3 (E.D. Wis. Sept. 11, 2008). The court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant. *Curless*, 280 F.R.D. at 433. The lenient interpretation standard, however, has sometimes been supplanted by a more rigorous examination standard if there has been more extensive discovery allowed the plaintiff. *See Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823-26

- 7 -

(N.D. Ohio 2011) (surveying cases).[4]  The second stage in a collective proceeding comes after any opt-ins have appeared and discovery has been finished.  Then the defendant is given an opportunity to move for decertification.  At that stage, if requested to do so, the court makes a more rigorous examination of the facts relating to whether or not the case may appropriately continue as a collective action.  *See Curless*, 280 F.R.D. at 433.  At the present stage of this proceeding, "this Court will consider the evidence submitted by both parties but, because the cases have not yet progressed to stage two and the Court only has an incomplete factual record, it is appropriate to require Plaintiffs to make a modest 'plus' factual showing that there is a group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices." *Creely*, 789 F. Supp. 2d at 826.

---

[4]The cases cited by defendants to support a higher standard are off-point. *See* Def. Answer Br. at 9 n.8 (citing *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 961 (W.D. Mich. 2009); *Valcho v. Dallas Cnty. Hosp. Dist.*, 574 F. Supp. 2d 618, 622 (N.D. Tex. 2008)).  Those cases refer to applying a less lenient standard when there has been discovery.  *Pacheco*, though, refers to changing from a more lenient standard of relying on plaintiff's pleadings to requiring the modest factual showing generally applied by courts in the Seventh Circuit.  Similarly, *Valcho* refers to changing from a more lenient evidentiary standard to a standard similar to a modest factual showing.  In any event, as discussed in *Creely*, there are some courts that apply an even more stringent standard when there has been substantial discovery.

Both sides' evidentiary submissions will be considered in determining whether there is a group of similarly situated employees who may be discovered by sending out an opt-in notice. In evaluating each side's submissions, it must be kept in mind that, despite the discovery that has been allowed, defendants still have greater access to evidence than plaintiffs and plaintiffs' modest showing need not be conclusive. In support of plaintiffs' conditional certification motion the following facts are before the court:

From January 2007 until May 2010, entities within the Hospital Division, outside of California, automatically deducted 30 minutes for the meal breaks of hourly employees. No entities in the Nursing Center Division or the Rehabilitation Division or any entities in California had 30 minutes automatically deducted for their meal breaks during this period of time. Since May 2010, all hourly employees working at all Kindred facilities have been required to clock out and then back in for their meal breaks. Plaintiffs have identified no evidence that anyone has missed a meal break without being paid after May 2010.

Bergman was employed as a staff registered nurse by Lakeshore from April 2007 to July 2009. Smith began working for Lakeshore in April 2009.

Wesseh and Hawk are employed at Lakeshore. Cason worked as a registered nurse at Kindred-Detroit from March 2007 until the facility closed in May 2008.

The Employee Handbook sets forth Lakeshore's policy with respect to meal breaks and timekeeping.

> **Meal and Work Breaks (Rest Breaks)**
> Employees will be provided a one-half hour unpaid meal break in accordance with state law. You are expected to schedule your meal breaks with your supervisor. Meal breaks are not considered time worked, so you must leave your workstation to take your meal break. If you are a non-exempt employee, you must clock out unless your facility allows for an automatic meal deduction. Meal breaks may not be used to make up time for tardiness or to leave work early without prior permission from your supervisor.
>
> If your meal break is interrupted by work demands, you must report that to your supervisor and note the 30 minutes on your time card as worked time so that you will be paid.
>
> Your facility will schedule work breaks (or rest) in accordance with applicable state and federal law. Work breaks are considered time worked and are paid.
>                                                    * * *
> **Timekeeping For Non-Exempt Employees**
>                                                    * * *
> This policy prohibits "off-the-clock" work under all circumstances. You must record all hours that you work, including any time worked before or after the completion of your scheduled shift, while at home, while on call, or during an interrupted meal break, whether or not the time has been approved in advance, using a feedback form or the time reporting method required by your facility. You will be paid

for all hours worked, whether or not the time was approved in advance. If you perform any work during your 30-minute meal break, then you will be paid for the entire meal break.

Lakeshore employees are informed of its meal break policy at an orientation and provided with a copy of the Handbook. All are required to acknowledge having read the Handbook. A so-called missed punch form is used to record interrupted or missed meal breaks.

Bergman is a registered nurse who was employed at three Kindred facilities: Central, Lakeshore, and Montrose. He frequently missed meal breaks. Bergman was familiar with the missed meal break report form, but did not use it. He believed that his supervisors knew the situation. He was not discouraged by supervisors from using the form to record missed meal breaks, however. Bergman was told that meal breaks were not regularly scheduled and that he should "get them when you can." Bergman was often unable to take meal breaks because of his patients' clinical needs. Also, frequently there was no one else available to care for his patients. Bergman witnessed other employees miss meal breaks or have their meal interrupted. Other nurses expressed concerns about missing their meal breaks which Bergman heard.

Cason was employed as a registered nurse at Kindred-Detroit. She estimated that she was not able to take a meal break during at least half of the shifts she worked because of her workload. Cason was often interrupted during meal breaks because of patient emergencies and medication administration. She complained about missing meal breaks. Cason observed nurses in the acute care ward eating in patients' rooms. Cason stated that she never reported missed lunch breaks to her supervisor. She conceded that, had she done so, she would have been paid for the time missed.

Lisa Smith is a phlebotomist who worked at two Kindred facilities: Kindred Lakeshore and Kindred Northlake. She stated that she regularly worked during her meal breaks. There were times when her meal break was interrupted. Her supervisor made clear that the doctors were not getting the results on-time and it was her job to get the results to the doctor regardless of her meal break. Smith was informed by her supervisor, Vicki Benthine, that if she missed a meal break, she was to advise Benthine. Smith recalled only two instances when she reported to Benthine that she worked through her meal break. Smith believes that she was paid for those missed meal breaks. Since May 2010, Smith has not worked through any meal breaks for which she has not been paid.

The declaration of Wesseh states that she is employed in the lab unit at Lakeshore. She has been unable to take lunch breaks and her lunch breaks have been interrupted.

Smith and Cason stated that their supervisors would have no way of knowing whether they had worked through their meal breaks unless they reported the fact. No supervisor ever instructed Bergman, Smith, or Cason to work through meal break and not seek compensation for that work.

Bergman and Cason worked 12½-hour shifts. Bergman worked less than 38½ hours during the work week. There were many weeks when Cason worked less than 38½ hours as well as when she worked overtime. Smith worked 8½-hour shifts and her hours fluctuated.

None of the plaintiffs or opt-ins has records or other evidence to support their estimates of the number of missed or interrupted meal breaks.

The Lakeshore Handbook contains the following:

**<u>Auto Meal Deduct</u>**

\* \* \*

Employees should clock for a meal if they will be gone longer than 30 minutes and/or they will be leaving the premises during their meal. When the employee clocks out/in for the meal, the auto-deduct will not occur. Clocked meals are rounded. **Meals shorter than 30 minutes are *rounded up* to 30 minutes**, thus still enforcing the 30-minute auto-deduct.

Meals that are clocked for longer than 30 minutes are *rounded to the nearest quarter hour.* (example: if a meal is clocked out for 37 minutes it will be deducted as 30 minutes. If the meal is clocked out for 38 minutes it is deducted as 45 minutes)

Employees are required to take their meal breaks, not only to avoid unscheduled labor hours but because State laws often require it, and even where not required by the state--Kindred's policy requires that all employees working 6.5 hours or more be given a 30 minute meal break to promote physical well-being and quality job performance.

Employees should not miss meals unless specifically asked to do so by their supervisor and only in unavoidable circumstances. When asked to miss a meal or return early from a meal break--the employee should be supplied with a feedback form signed by the supervisor indicating that the missed meal is "authorized." Employees who miss meals without authorization will be counseled regarding policy, and where employees are consistently missing meals <u>with</u> a supervisor's approval, it may be necessary for the CEO or his/her designate to review with the supervisor.

Feedback forms signed by a supervisor and the employee will represent the documentation necessary to "cancel" a meal deduction and pay the employee for a missed meal.

The FLSA provides that all time which employers permit to be worked must be compensated. 29 U.S.C. §§ 206, 207. Regulations implementing the law state: "Work not requested but suffered or permitted is work time. . . . The reason is immaterial. The employer knows or has reason to believe that he is continuing

to work and the time is working time." 29 C.F.R. § 785.11. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed." 29 C.F.R. § 785.13. *See Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011).

There is a series of health care cases that have considered conditional certification for auto-deduct policy claims as a violation of the FLSA. Cases considering certification are gathered in *Creely*, 789 F. Supp. 2d at 820 n.2.

Defendants rely on *Frye v. Baptist Mem'l Hosp. Inc.*, 2010 WL 3862591 at *5 (W.D. Tenn. Sept. 27, 2010), *aff'd by unpublished order*, 495 F. App'x 669, 673-74 (6th Cir. 2012), and *Cason v. Vibra Healthcare* 2011 WL 1659381 *3 (E.D. Mich. May 3, 2011), for the proposition that their meal auto-deduct policy is lawful.[5] *Compare Kellar*, 664 F.3d at 177.[6] Defendants

---

[5]These cases do not hold that the type of policy that Kindred has is *per se* lawful, only that such a policy standing alone is not unlawful. Surrounding facts, such as a common practice of not following the written policy, may still show that the FLSA is being violated.

[6]*Kellar* , 664 F.3d at 177, states:

The FLSA imposes an obligation on the employer "to exercise its control and see that the work is not performed if it does not want it to be performed." *See* 29 C.F.R. § 785.13. The employer "cannot sit back and accept the benefits without compensating for them." *Id.* "[The employer's] duty arises

also call attention to ***Wood v. Mid-Am. Mgmt. Corp.***, 192 F. App'x 378, 379-80

(6th Cir. 2006), and ***Newton v. City of Henderson***, 47 F.3d 746, 749 (5th Cir.

1995), stating that the employer has a right to require an employee to adhere to its

procedure to for claiming overtime.  *Compare* ***Kellar***, 664 F.3d at 177.  Further,

defendants cite ***Boyd v. Alutiiq Global Solutions, LLC***, 2011 WL 3511085 (N.D.

Ill Aug. 8, 2011), and ***MacGregor v. Farmers Ins. Exch.***, 2011 WL 2981466

(D.S.C. July 22, 2011), where certification was denied.

---

even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." ***Chao v. Gotham Registry, Inc.***, 514 F.3d 280, 288 (2d Cir.2008).  The mere promulgation of a rule against overtime work is not enough.  29 C.F.R. § 785.13.  Nor does the fact that the employee performed the work voluntarily necessarily take her claim outside of the FLSA.  29 C.F.R. § 785.11.

However, the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about.  *See* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work.");  ***Reich***, 28 F.3d at 1082 ("[A]n employer's knowledge is measured in accordance with his duty . . . to inquire into the conditions prevailing in his business. . . .  [A] court need only inquire whether . . . [the employer] had the opportunity through reasonable diligence to acquire knowledge."  (internal quotation marks and citations omitted)); 29 C.F.R. § 785.11 ("The employer knows or has reason to believe that he is continuing to work.").

A recent case from this district with facts similar to the present case is *DeMarco v. Nw. Mem'l Healthcare*, 2011 WL 3510905 (N.D. Ill. Aug. 10, 2011). Conditional certification was granted without a rigorous review of the parties' presentations, leaving until a possible second stage review some of the arguments advanced by the defendant.

The district court cases cited by both sides turn largely on the factual showings and the courts' interpretations of the facts. It is not necessary or useful to discuss those cases in detail.

A fact which distinguishes this case from the cited cases is a provision in defendants' Handbook that states: "Clocked meals are rounded. **Meals shorter than 30 minutes are *rounded up* to 30 minutes**, thus still enforcing the 30-minute auto-deduct." It may be, as defendants contend, that the rule is narrow, applying only to clocked meals, and that it was not applied unlawfully. But at this stage of the proceedings, it is possible to argue that the rule, if applied to short interruptions of a meal-break (as is frequently the case) could result in failure to provide a full meal break or proper compensation. Doubts raised by this provision cannot be resolved at this stage of the proceedings.

Viewing the facts based primarily on the showing made by the plaintiffs, conditional certification will be granted but limited. The showing made by the plaintiffs is essentially limited to the meal-break rule as experienced by nurses and hospital employees who are engaged in the direct care of patients. The nature of their interrupted meal breaks was affected by the demands of patient care. Notice will be sent to only those Hospital Division employees who are directly engaged in patient care. Such a limitation has been found to be appropriate. *See* **DeMarco**, 2011 WL 3510905 at *4 (N.D. Ill.); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 208-09 (N.D.N.Y. 2008); *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 162-63 (N.D.N.Y. 2008).

## Equitable Tolling

Plaintiffs request that the statute of limitations applicable to the FLSA claims be tolled for potential opt-ins. Equitable tolling may be applied if it is shown that (1) the party has diligently pursued his or her rights and (2) some extraordinary circumstance stood in the way and prevented timely filing. *McQuiggin v. Perkins*, 133 S. Ct. ___, 2013 WL 2300806 *7 (May 28, 2013) (quoting *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010)). Equitable tolling is a judicial doctrine that is presumed to apply unless the applicable statute of

limitations is jurisdictional. *Holland*, 130 S. Ct. at 2560 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)). Section 255(a) of Title 29 provides the two-year/three-year (willful) limitation period applicable to minimum wage and overtime claims. For opt-ins, 29 U.S.C. § 256(b) provides that the commencement of the action is when the opt-in files his or her written consent with the court. This is not the type of statutory scheme that overcomes the presumption in favor of equitable tolling, *compare Holland*, 130 S. Ct. at 2561, nor is it a jurisdictional limitation period. *Chao v. Va. Dep't of Transp.*, 157 F. Supp. 2d 681, 700 (E.D. Va. Jul 18, 2001), *aff'd in part, rev'd in part on other grounds*, 291 F.3d 276 (4th Cir. 2002). Courts have held that equitable tolling can apply to the § 255(a) limitation period. *See Antonio-Morales v. Bimbo's Best Produce, Inc.*, 2009 WL 1591172 *1 (E.D. La. April 20, 2009).

Ordinarily, even when there are excessive briefs and exhibits to the briefs, this bench will rule on a motion within a few months after the motion becomes fully briefed. Unfortunately, through no fault of the existing or potential plaintiffs, there has been excessive delay in ruling on the pending motion. Plaintiffs filed their reply brief on June 30, 2011. In the usual course, a ruling would have occurred shortly thereafter. The long delay in issuing a ruling is an

extraordinary circumstance that should not cause the opt-ins to lose out on the potential benefits of this lawsuit.[7] *See **McGlone v. Contract Callers, Inc.**,* 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012); ***Yahraes v. Rest. Assocs. Events Corp.**,* 2011 WL 844963 *2 (E.D.N.Y. March 8, 2011); ***Stickle v. SCIWestern Mkt. Support Ctr., L.P.**,* 2008 WL 4446539 *22 (D. Ariz. Sept. 30, 2008); ***Owens v. Bethlehem Mines Corp.**,* 630 F. Supp. 309, 312 (S.D.W. Va. 1986); ***Helton v. Factor 5, Inc.**,* 2011 WL 5925078 *2 (N.D. Cal. Nov. 28, 2011). *But compare **Powers v. Centennial Commc'ns Corp.**,* 2010 WL 746776 *3-4 (N.D. Ind. Feb. 26, 2010). Defendants' contention that potential opt-ins could have joined in or brought their own lawsuit while the ruling was pending ignores the realities of FLSA claims. Moreover, such an argument would go against ever applying equitable tolling to a potential opt-in. The length of delay in ruling on the pending motion is an extraordinary circumstance for which justice supports the application of equitable tolling.

---

[7]Defendants' contention that the existing plaintiffs were not necessarily fully diligent in pushing this case along need not be considered. The period of tolling is being limited to the additional time taken to rule on the motion; a time period during which plaintiffs had no action to take that could be considered lacking in diligence.

The running of the applicable statute of limitations will be tolled from June 30, 2011 until the date today's ruling is entered on the docket. No tolling will be applied prior to that date and, absent another unusual delay, there will be no further tolling for the time necessary to issue the opt-in notice and process any consent forms that are received. These are circumstances that are part of the ordinary litigating of an FLSA case, not extraordinary circumstances supporting further equitable tolling.

Although plaintiffs' pending motion for conditional certification states that a proposed notice to potential opt-ins is attached, no such proposed notice is provided with the motion. A proposed notice was attached to a previously filed motion. *See* Docket Entry 94-2. This notice has been examined and needs substantial modification.[8] Instead of using the proposed notice, plaintiffs are directed to provide a notice substantially similar to the notice approved in *Vennet v. Am. Intercontinental Univ. Online*, 2005 WL 6215171 *8-10 (N.D. Ill. Dec. 22, 2005). Plaintiffs, in consultation with defendants, shall modify the *Vennett* form to list appropriate parties, employers and work facilities, job

---

[8]For example, no reference should be made to this being certification of a class, potential opt-ins being class members, and the existing plaintiffs being representatives.

positions, dates, contact information, and a description of the lawsuit.  As found and held in today's ruling, notice is limited to being sent to Hospital Division employees who provided direct patient care.  As proposed in plaintiffs' suggested consent form, the consent form may include lines listing the facilities at which the employee worked, as well as the employee's cell phone number and email address.

Within 14 days of the date of today's ruling, plaintiffs shall submit a revised notice for approval by the court.  To the extent it has not already been provided, within 21 days of today's ruling, defendants shall provide plaintiffs with a list of names and addresses of potential opt-ins.  Notice is to be mailed out by no later than July 26, 2013.  Consents to join the lawsuit should be filed with the court by no later than September 19, 2013.

Issues raised with respect to the certification of Rule 23(b) classes will be dealt with in a separate opinion and order.

IT IS THEREFORE ORDERED that plaintiff's motions for conditional certification [117, 123] are granted in part and denied in part.  Defendants' motion for summary judgment [142] is denied without prejudice.  Plaintiff's motion for equitable tolling [166] is granted in part and denied in part.  The statute of limitations for opt-ins is tolled from June 30, 2011 to the date of entry of today's

order.  Within 14 days, plaintiffs shall submit a proposed notice for potential opt-ins.  Within 21 days, defendants shall provide to plaintiffs a list of addresses.  Notice to potential opt-ins is to be mailed by July 26, 2013.  Consents to join this lawsuit are to be filed by no later than September 19, 2013.  A status hearing is set for July 18, 2013 at 2:00 p.m.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED:  JUNE 11, 2013